By the Court :
The purchase of the lease of the salt works, by the three Sarchets and Knowles, to carry on salt works, constituted them partners. When Knowles sold out to Peter his one-fourth, and Peter sold an equal proportion of that fourth to Thomas and John Sarchet, the three Sarchets became, in equity, partners in the salt works property. Sarchet covenanted with Knowles to perform to Chandler, Knowles’ covenant with him, and Thomas and John became parties to this contract, by their subsequent agreement with Peter. In this state of the case, Thomas and John Sarchet, when they paid the whole purchase money to Chandler, could not compel Knowles to contribute his fourth part, because, in equity, Knowles owed nothing. The three Sarchets were the real debtors. Thomas and John owed two-thirds, and Peter one-third. Peter was, therefore, the debtor to Thomas and John, for all the money they paid beyond their own proportion of that contract.
But as between the original parties, no change was made in their respective legal rights. The three Sarchets and Knowles remained bound to Chandler, upon their covenant, for the purchase money; and the new arrangements between Knowles and the Sarchets, was never reduced to such legal forms as to create new legal interests. When suit was prosecuted against Thomas and John Sarchet by Peter, they had not paid the amount due to Chandler, and had they made such payment, a doubt might have arisen whether it could have been set off at law, because it was only by a resort to equity that the true state of their respective interests and 1‘abili-ties could be determined and adjusted.
If there were no debt due from Thomas and John Sarchet to Peter, and they, having paid the whole amount due *to Chandler, sought to subject Peter to the payment of his proportion, it would be necessary for them to resort to equity, as well upon account of the partnership, as that the contract with Chandler, upon which the payment was made, embraced other parties. In a *302 bill to account by Thomas and John against Peter, it would be sufficient to make Peter defendant, and there can be no doubt that he could have set off his judgment against Thomas and John. This view of the situation of the parties, seems to demonstrate the propriety of allowing the set-off now claimed. It is a case of mutual credits, “ due to and from the same persons in the same capacity,” and is within the principle laid down in Dale v. Cook, relied upon by the respondent’s counsel. In Quintin’s case, 3 Ves. 218, and in James v. Kynnier, 5 Ves. 108, set-off's were allowed in equity, which, it was admitted could not be made at law. These; it is true, were cases of a bankruptcy of one of the parties. But in Dale v. Cook, Chancellor Kent correctly remarks, that the set-off cases in bankruptcy “ leave the general rule very much as it existed before.”
Set-off decreed — each party to pay his own costs.